## Schneider v. Taylor

C.P. of Monroe County, no. 1949 Civil 1995.

*Cletus P. Lyman,* for plaintiff.
*Lori J. Cerato,* for defendant Pocono Medical Center.
*Thomas P. Comerford,* for defendant Dr. Taylor.
*Carson J. Taylor,* pro se.

WALLACH MILLER, *J.,* March 3, 2000—The gravamen of this case is the complaint by plaintiff that her son, now deceased, was wrongfully committed to the Mental Health Unit of Pocono Medical Center by Dr. James Taylor. This action began by a writ of summons filed on July 14, 1995. Following an extended period of procedural wrangling, plaintiff filed an amended complaint on July 16, 1997. The parties' preliminary discovery caused defendant Pocono Medical Center to file a motion to compel discovery on January 28, 1999, and a motion to compel authorization for psychiatric records on September 1, 1999. This court denied PMC's motion to compel authorization on November 16, 1999 pursuant to 50 P.S. §7111, which bars release of psychiatric records absent the patient's consent. PMC responded to the denial of its motion to compel authorization by filing

a motion for summary judgment on December 22, 1999. PMC and plaintiff have both provided the court with briefs, and oral argument was heard on February 1, 2000. Following a review of the parties' arguments and the applicable Pennsylvania law, we are now ready to dispose of this matter.

The standards of review for summary judgment are well established in Pennsylvania law. Pa.R.C.P. 1035.2(2) provides that a party may move for summary judgment:

"[I]f, after the completion of discovery relevant to the motion . . . an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

When deciding upon a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party and summary judgment may only be entered in cases where the right is clear and free from doubt. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992). For purposes of summary judgment, Pa.R.C.P. 1035.1 defines the scope of the record as including pleadings, depositions, answers to interrogatories, admissions and affidavits and "reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories." To defeat a motion for summary judgment under Pa.R.C.P. 1035.3(a)(2), the opposing party:

"[M]ay not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days after service of the motion identifying . . . evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced."

PMC's motion for summary judgment is limited to a challenge that plaintiff will not be able to produce evidence of damage at trial, and that some evidence of damage is required for plaintiff to prevail. PMC has phrased the question as: "Whether the circumstances of the case preclude plaintiff from producing evidence of damage so as to sustain her burden of proof at trial thereby entitling defendant Pocono Medical Center to the entry of judgment in its favor?" Accordingly, to defeat PMC's motion, plaintiff must identify admissible evidence that establishes plaintiff's ability to prove that PMC's conduct caused plaintiff to suffer at least one form of damage. A review of the record, and the applicable law reveals that plaintiff has identified evidence that, when taken in the light most favorable to plaintiff, establishes plaintiff's entitlement to recover at least nominal damages from PMC.

Plaintiff's cause of action against PMC stems from plaintiff's son's alleged involuntary commitment during the period of July 23, 1993 until July 27, 1993. Plaintiff alleges that PMC participated in the process to involuntarily commit her son pursuant to the Pennsylvania Mental Health Procedures Act, 50 P.S. §7101 et seq., and that his rights to due process were violated by PMC's failure to comply with the due process requirements of the MHPA. Specifically, plaintiff alleges that the defendants failed to comply with section 7302(b) of the MHPA, which specifies that a person who is being considered for involuntary commitment and who is taken to a facility for that purpose "shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment . . . ." Plaintiff also alleges that the defendants failed to com-

ply with section 7302(c) of the MHPA, which specifies that:

"Upon arrival at the facility, the person shall be informed of the reasons for emergency examination and of his right to communicate immediately with others. He shall be given reasonable use of the telephone. He shall be requested to furnish the names of parties whom he may want notified of his custody and kept informed of his status . . . ."

Plaintiff alleges that her son, the decedent, went to PMC on July 23, 1993 for treatment of a stomach disorder, and that a psychiatrist on the staff of PMC examined plaintiff to determine whether plaintiff was mentally competent to give his consent to receive a necessary gastric intubation procedure. Plaintiff further alleges that on the same day, but without her son's knowledge, defendant Dr. James Taylor executed an application for involuntary emergency examination and treatment against plaintiff pursuant to the MHPA, in which Dr. Taylor alleged that plaintiff's severe mental illness presented a danger to others and to plaintiff. The Monroe County Mental Health officer allegedly approved Dr. Taylor's application for plaintiff's son's commitment, and a warrant was issued to have her son brought to a health care facility for the emergency examination required by section 7302(b) of the MHPA. Because he was already admitted at PMC, the warrant and its related paperwork allegedly were merely delivered to PMC by a police officer.

Plaintiff next alleges that pursuant to the requirements of section 7302(b) of the MHPA, within two hours of PMC's receipt of the warrant and its paperwork, her son should have received an examination based solely upon the issue of whether he was "severely mentally disabled"

within the meaning of section 7301 of the MHPA. Plaintiff alleges that he never received the emergency examination required by section 7302(b) of the MHPA, and that his subsequent involuntary commitment was based merely upon the previous findings made by the psychiatrist who examined him concerning his ability to consent to the gastric intubation procedure. Plaintiff also alleges that her son was never informed as to the reasons for his detainment, or given a reasonable chance to use the telephone to notify those persons who may have been concerned about him, in contravention of the requirements imposed by section 7302(c) of the MHPA.

Plaintiff has alleged that PMC is a corporation and a hospital, and that defendant Dr. Taylor was a psychiatrist on PMC's staff during the time period relevant to this suit. As a treatment facility that is alleged to have participated in plaintiff's involuntary commitment pursuant to the MHPA, PMC is subject to the requirements and allowances specified under the MHPA. 50 P.S. §7105. Our Superior Court has recognized that the MHPA "evidences a legislative intent to create a treatment scheme under which the patient's procedural protections expand progressively as the deprivation of his liberty gradually increases." *Commonwealth v. C.B.,* 307 Pa. Super. 176, 181, 452 A.2d 1372, 1374 (1982), citing *In re Ann S.,* 279 Pa. Super. 618, 421 A.2d 370 (1980). In addition, the Superior Court has consistently held that the due process requirements in the MHPA must be strictly construed, because involuntary commitment under the MHPA represents a substantial deprivation of a person's freedom. *C.B., supra,* at 181, 452 A.2d at 1374; *In re Condry,* 304 Pa. Super. 131, 137, 450 A.2d 136, 139 (1982); *In re T.J.,* 699 A.2d 1311, 1314 (Pa. Super. 1997).

The MHPA is designed to work in conjunction with existing laws and remedies, and section 7113 of the MHPA provides that persons subjected to treatment under the MHPA "shall be entitled to all other rights now or hereafter provided under the laws of this Commonwealth, in addition to any rights provided for in this Act." 50 P.S. §7113. Accordingly, under 50 P.S. §7113, patients subjected to involuntary commitment through the MHPA's procedures may pursue any remedies that are available under statutory or common law.

We find, at this stage, plaintiff's allegations are sufficient to state a cause of action under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, which is the federal statute that creates a right of recovery for citizens who have been deprived of lawful rights by a person acting under the color of state law. The relevant portion of the Fourteenth Amendment provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ."

42 U.S.C. §1983 specifies that:

"Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, For purposes of this section, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

To sufficiently state a claim under 42 U.S.C. §1983, a plaintiff must allege facts which show deprivation of a right, privilege or immunity secured by the United States Constitution or federal law by a person acting under color of state law. *Lopez v. Department of Health Services,* 939 F.2d 881 (Ariz. 1991); *Interboro Institute Inc. v. Maurer,* 956 F. Supp. 188, 199 (N.D.N.Y. 1997). In addition, a section 1983 complaint must state specific facts, not merely legal and constitutional conclusions. *Fee v. Herndon,* 900 F.2d 804 (C.A.5 Tex. 1990), *certiorari denied,* 498 U.S. 908, 111 S.Ct. 279. In the instant case, plaintiff alleges that PMC committed two specific due process violations under the MHPA, and that PMC's failure to comply with the requirements of the MHPA violated his right to due process under the Fourteenth Amendment of the United States Constitution. At this stage, we must accept as true the plaintiff's pleadings, and under that standard, along with *Lopez; Interboro* and *Fee, supra,* plaintiff's pleadings are sufficiently specific to state a cause of action under 42 U.S.C. §1983.

Plaintiff correctly alleges that PMC's participation in his involuntary commitment constituted an action taken "under the color of state law" within the meaning of 42 U.S.C. §1983. The federal courts have held that involuntary commitment of a patient who is mentally ill is an action "under the color of state law" within the meaning of 42 U.S.C. §1983, because such a function is "traditionally the exclusive prerogative of a state." *Lombard v. Eunice Kennedy Shriver Center for Mental Retardation Inc.,* 556 F. Supp. 677 (D. Mass. 1983); *Ruffler v. Phelps Memorial Hospital,* 453 F. Supp. 1062 (S.D.N.Y. 1978); see also, *Davenport v. Saint Mary Hospital,* 633 F. Supp. 1228, 1236-37 (E.D. Pa. 1986) and *Faulk v. Ludwig,* 732 F. Supp. 591, 597-99 (W.D. Pa. 1990). In

addition, our Superior Court has held that a heath care facility is a "person" within the meaning of the MHPA. *Farago v. Sacred Heart General Hospital,* 365 Pa. Super. 1, 528 A.2d 986 (1987). Accordingly, in the instant case, PMC is considered a "person" within the meaning of the MHPA, and PMC is therefore subject to 42 U.S.C. §1983 as a person who allegedly deprived a United States citizen of lawful rights while under the color of a state statute.

Because plaintiff has sufficiently alleged a cause of action against PMC under 42 U.S.C. §1983, plaintiff's allegations, if proven at trial, are sufficient to entitle plaintiff to at least nominal damages. Recognizing that "constitutional rights are of such a value that nominal damages are presumed to flow from the deprivation of such rights," *Bell v. Gayle,* 384 F. Supp. 1022, 1026 (D.C. Tex. 1974), the United States Supreme Court has held that nominal damages must be awarded whenever a civil rights plaintiff establishes a violation of his due process rights, even when the plaintiff is unable to prove that he sustained an actual injury. *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), see also, *George v. City of Long Beach,* 973 F.2d 706 (C.A.9 (Cal.) 1992), *certiorari denied,* 113 S.Ct. 1269, 122 L.Ed.2d 664.

Under *Bell, Farrar,* and *George, supra,* we hold that plaintiff's pleadings are sufficient to state a cause of action for at least nominal damages under 42 U.S.C. §1983. Accordingly, we must deny PMC's motion for summary judgment, and enter the following order.

## ORDER

And now, March 3, 2000, defendant Pocono Medical Center's motion for summary judgment is denied.